**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JEFFREY L. SANFORD**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HENRY LEE SMITH, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1204-CR-148 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable J. Jerome Frese, Judge
Cause No. 71D03-1108-FB-130

**December 10, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Henry Lee Smith, Jr., appeals his conviction for battery as a class B felony. Smith raises one issue which we revise and restate as whether the trial court abused its discretion when it instructed the jury regarding serious bodily injury, the offense of aggravated battery as a class B felony, and the included offense of battery as a class C felony. We affirm.

The relevant facts follow. On August 13, 2011, Gregory Fulce who worked as a contractor and had known Smith for about three to five years and had been living with him in South Bend, Indiana, for about two weeks, received five or six hundred dollars from a customer for parts and materials and decided to celebrate. Fulce and Smith purchased some beer and liquor, and Smith invited a couple of women over and they started a party.

Fulce decided that he wanted to purchase drugs and alcohol and talked with his nephew, Vincent Jackson, who had shot Smith's brother ten or twelve years earlier. Jackson showed up at the party, and Fulce observed Smith's demeanor change. Smith stated that he thought that he should go with Fulce to purchase drugs and alcohol. The situation was tense and hostile, and Fulce told Smith "let's squash all this" and told him to wait until he returned and they would continue with the party. Transcript at 44. Fulce then left with Jackson, purchased drugs, and returned to the residence, but Jackson stayed at the location where they purchased the drugs.

When Fulce returned to the residence, no one was at the house. Fulce opened his refrigerator and discovered that the beer and liquor that he had purchased earlier were

2

gone.  Smith then returned to the residence, and Fulce told Smith that they should pick up some more beer and alcohol, and they left the residence.

Fulce told Smith that he did not have to take the beer and alcohol and asked him "what's going on," but Smith did not answer.  Id. at 48.  At some point, Fulce turned around to show Smith a text message, and Smith stabbed him underneath his left arm in the area between his armpit and nipple.  Fulce pushed away and stepped back, and Smith stabbed him again under his arm and slightly lower than the first stab.  Fulce grabbed Smith's hand, and they started wrestling and tousling with the knife.  Smith then gave Fulce a "hard stab" in the soft part of Fulce's stomach.  Id. at 51.  Fulce then asked Smith "what are you doing, why are you doing this," and Smith responded: "I'm going to kill you, Greg, I'm going to kill you."  Id.  While they were still wrestling for the knife, Fulce asked Smith why he wanted to kill him, and Smith said: "[W]ell, Vincent shot my brother, you know, now I'm going to kill you."  Id. at 52.  Fulce's hand slipped off of Smith's arm, and Smith stabbed Fulce on the left side of his gut.  Fulce went down to his knees and told Smith to stop.  Smith grabbed Fulce behind his collar and went to cut Fulce's throat, but Fulce raised his arm, and Smith cut Fulce's arm.  Fulce then grabbed Smith's hand and tried to bite his hand.

Fulce saw a light over a door, pushed away from Smith, ran towards the door, and fell onto the porch of Erica Hoffman's residence where he yelled "help me" while covered in blood.  Hoffman called 911.  Id. at 111.  When South Bend Police Officer Tyler Jackey arrived, Fulce was "screaming in pain" and had "uncontrolled bleeding."  Id. at 123.  Fulce suffered six injuries including two injuries that penetrated the peritoneal

3

cavity and an injury to the left side of his upper chest. Fulce underwent surgery to stop the internal bleeding and spent four days in the hospital.

On August 20, 2011, the State charged Smith with aggravated battery as a class B felony. On November 15, 2011, the State filed an additional charge of attempted murder as a class A felony.

In February 2012, the court held a jury trial. Prior to closing argument, Smith's counsel proposed two instructions. Specifically, Smith's first proposed instruction addressed the lesser included offense of battery and stated:

> The law permits the jury to determine whether the Accused is guilty of certain charges which are not explicitly included in the indictment/information. These additional charges which the jury may consider are called included offenses. They are called included offenses because they are offenses which are very similar to the charged offense. Usually the only difference between the charged offense and the included offense is that the charged offense contains an element that is not required to be proven in the included offense, or that the charged offense requires a higher level of culpability than the included offense.

> If the State proves each of the essential elements of the charged offense, then you need not consider the included offense(s), however, if you find the State failed to prove each of the essential elements of the charged offense, you must find the accused not guilty of the charged offense.

> If you do find the Accused not guilty of the charged offense then you may consider whether the Accused is guilty of the included offense(s). You must not find the accused guilty of more than one crime for each count.

> In this case, the accused is charged with Aggravated Battery. That is: the defendant, did knowingly, inflict injury to Gregory Fulce and the injury created a substantial risk of death, to wit, a stab wou[n]d or wounds to the torso of Gregory Fulce. If the State failed to prove each of these elements beyond a reasonable doubt, you must find the accused not guilty of Aggravated Battery, a Class B Felony, as charged in Count I.

4

You may then consider any included crime. The crime of Battery is included in the charged crime of Aggravated Battery. The defendant, did knowingly touch Gregory Fulce in a rude, insolent or angry manner causing serious bodily injury. If the State failed to prove each of these elements beyond a reasonable doubt you must find the accused not guilty of battery as included in Count I.

If the State did not prove each of the elements of the crime of Battery beyond a reasonable doubt, you may find the accused guilty of Battery, a Class C Felony.

Appellant's Appendix at 58. Smith's second proposed instruction addressed serious bodily injury and stated:

Serious Bodily Injury is defined by statutes as follows:
Seriously [sic] Bodily Injury means bodily injury that creates a substantial risk of death or that causes:

1. Serious permanent disfiguration;
2. Unconsciousness;
3. Extreme pain;
4. Permanent or protracted loss or impairment of the function of a bodily member or organ.

Id. at 59. The two foregoing instructions were marked as modified by the court.

The court's written instruction stated:

To convict [Smith] of Count I, Aggravated Battery, a Class B Felony, the State must have proved each of the following essential elements beyond a reasonable doubt:

1. [Smith]
2. did knowingly
3. inflict injury on Gregory Fulce
4. and the injury created a substantial risk of death, to-wit: a stab wound or wounds to the torso of Gregory Fulce.

If the State proved each of these essential elements beyond a reasonable doubt, you may find the defendant guilty of Count I, Aggravated Battery, a Class B Felony.

5

However, included in this offense is a lesser included offense of Battery as a C Felony, which is knowingly touching another person in a rude, insolent, angry manner causing serious bodily injury. "Serious bodily injury" means bodily injury that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss of impairment of the function of a bodily member or organ. If you find that the evidence proved beyond a reasonable doubt that the defendant knowingly touched Gregory Fulce in a rude, insolent or angry manner causing injury, and you find that the injury was serious bodily injury but did not create a substantial risk of death to Gregory Fulce, you may find the defendant guilty of the lesser included offense in Count I of Battery, Class C felony.

If you find that the State failed to prove one or more of <u>these</u> essentials elements in Count I, you must find the defendant not guilty of Count I.

<u>Id.</u> at 33-34.

After the closing arguments, the court addressed the jury and stated:

I am going to be reading to you the final instructions.

If I read something that's different from what you're reading, if it's a word or something, that can happen from a mind slip. It would probably mean essentially the same thing. A synonym sometimes I use.

If I find a mistake in the instructions, which I sometimes do when I'm reading it, I'll tell you this is a mistake here.

\* \* \* \* \*

The statutes defining the offenses charged herein provides [sic], in pertinent part, as follows:

Count I: A person who knowingly inflicts injury on a person that creates a substantial risk of death commits Aggravated Battery, a Class B felony.

\* \* \* \* \*

The law permits the jury to determine whether the accused is guilty of certain charges which are not explicitly included in the indictment information. These additional charges which the jury may consider are

6

called included offenses. They are called included offenses because they are offenses which are very similar to the charged offense and the included offense requires that the charged offense contains an element that is not required to be proved in the included offense – I think I'm going to change that wording because I think it's actually inaccurate to say – they're called included offenses because they are offenses which are very similar to the charged offense and the difference – take out the included offense – the difference. I think it was a typo. The difference is that the charged offense contains an element that is not required to be proved in the included offense or that the charged offense requires a higher level of culpability than the included offense. I apologize for that error.

To convict [Smith] of Count I, Aggravated Battery, a Class B felony, the State must have proved each of the following essential elements beyond a reasonable doubt: One, [Smith]; two, did knowingly; three, inflict injury on Gregory Fulce; four, and the injury created a substantial risk of death, to-wit: a stab wound or wounds to the torso of Gregory Fulce.

If the State proved each of these essential elements beyond a reasonable doubt, you may find the defendant guilty of Count I, Aggravated Battery, a Class B felony.

However, included in this offense is a lesser included offense of Battery as a C felony, which is knowingly touching another person in a rude, insolent, or angry manner causing serious bodily injury. Serious bodily injury means bodily injury that causes serious permanent disfigurement, unconsciousness, extreme pain, or permanent or protracted loss of impairment – and that should say or impairment of the function of a bodily member or organ. If you find that the evidence proved beyond a reasonable doubt that the defendant knowingly touched Gregory Fulce in a rude, insolent, or angry manner causing injury, and you find that the injury was serious bodily injury but did not create a substantial risk of death to Gregory Fulce, you may find the defendant guilty of the lesser included offense in Count I of Battery, Class C felony.

If you find that the State failed to prove one or more of these essential elements in Count I, you must find the defendant not guilty of Count I.

Transcript at 280-292.

After the court gave the jury the final instructions and the jury began deliberations, Smith's counsel objected to the court's instruction regarding the lesser included offense. Specifically, Smith's counsel stated:

> This is a misstatement of the law in defendant's instruction number one because our argument is that the jury could find a substantial risk of death even though – even though if it would be a C felony, they could still find that. I think the Court's instruction is misleading. I think the defendant's instruction number one and defendant's instruction number two is a correct statement of the law. I don't think the Court's instruction is a correct statement of the law because the difference between an A felony and the C felony is the culpability for committing the offense.

Id. at 297-298. The court responded:

> Liz, make a record that in reading the instruction on the lesser included offense I found an error which we had not discussed but I corrected it in the reading to the jury which was a phrase that said included offenses are very similar to the charged offense and the included offense is that the charged offense contains, dot, dot, dot – actually to say the included offense, strike included offense there, and I put in difference. Just the word difference.

Id. at 298.

The jury found Smith guilty of aggravated battery as a class B felony and not guilty of attempted murder. On March 22, 2012, the court sentenced Smith to fifteen years in the Department of Correction.

The issue is whether the trial court abused its discretion when it instructed the jury regarding serious bodily injury, the offense of aggravated battery as a class B felony, and the included offense of battery as a class C felony. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S.

8

1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. Id. at 1163-1164. To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000). To determine whether a trial court abused its discretion by declining to give a tendered instruction, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. Henson v. State, 786 N.E.2d 274, 277 (Ind. 2003). Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005). An error is to be disregarded as harmless unless it affects the substantial rights of a party. Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61.

Smith argues that the instruction given by the court "stated incorrectly that substantial risk of death was not an element of Battery Resulting in Serious Bodily Injury and was the only element distinguishing it from Aggravated Battery." Appellant's Brief at 9. Smith contends that "the jury could have found that the injuries to Gregory Fulce created a substantial risk of death and then decided if [Smith] knowingly or intentionally created that risk or merely knowingly or intentionally touched Mr. Fulce in a rude, insolent or angry manner and the resulting injuries created a substantial risk of death."

9

Id. at 10. Smith argues that "[t]he trial court's instruction misled the jury from considering this possibility." Id.

The State argues that although the trial court may have erred by failing to provide the complete definition of serious bodily injury, any error was harmless. The State argues that substantial risk of death was an element of aggravated battery as a class B felony and that "if the jury had not found that Fulce was subjected to a substantial risk of death, it would have had to acquit Smith of aggravated battery, but could still find that Fulce suffered serious bodily injury." Appellee's Brief at 9. The State points out that Smith's counsel argued that there had not been proof beyond a reasonable doubt that the injuries created a substantial risk of death. The State argues that "[i]n light of the evidence and the parties' arguments at trial, the jury instruction given by the court allowed Smith to fully argue that theory to the jury, and so any error in the wording of the instruction was harmless." Id. at 10. The State also argues that there was no serious dispute that Smith injured Fulce knowingly. The State contends that "Smith's claim of reversible error rests upon the implausible hypothesis that the jury might have found the injuries Smith inflicted upon Fulce created a substantial risk of death, but that Smith did not knowingly create that risk." Id. at 11.

The offense of aggravated battery is governed by Ind. Code § 35-42-2-1.5 which provides that "[a] person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death . . . commits aggravated battery, a Class B felony."[1]

---

[1] Ind. Code § 35-42-2-1.5 provides in it its entirety:

10

Ind. Code § 35-42-2-1 governs the lesser included offense of battery and provides in part that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon . . . ."

At the time of the offense and trial, Ind. Code § 35-41-1-25 defined serious bodily injury as follows:

> "Serious bodily injury" means bodily injury *that creates a substantial risk of death* or that causes:
>
> (1)     serious permanent disfigurement;
>
> (2)     unconsciousness;
>
> (3)     extreme pain;
>
> (4)     permanent or protracted loss or impairment of the function of a bodily member or organ; or
>
> (5)     loss of a fetus.

---

A person who knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes:

> (1)     serious permanent disfigurement;
>
> (2)     protracted loss or impairment of the function of a bodily member or organ; or
>
> (3)     the loss of a fetus;

commits aggravated battery, a Class B felony.

The State charged Smith with inflicting injury on Fulce "that created a substantial risk of death, to-wit: a stab wound or wou[n]ds to the torso of Gregory Fulce." Appellant's Appendix at 5.

11

(Emphasis added).[2]

The trial court did not provide a complete definition of "serious bodily injury" as it did not indicate that "serious bodily injury" is an injury that creates a substantial risk of death. Based upon the definition of "serious bodily injury" and the statutory language mentioned above, the court erred to the extent it suggested that the distinguishing element is that of the creation of a substantial risk of death. Rather, the mental state required for aggravated battery as a class B felony and battery as a class C felony resulting in serious bodily injury is different. Matthews v. State, 944 N.E.2d 29, 33 (Ind. Ct. App. 2011), reh'g denied. Specifically, "aggravated battery requires the defendant to knowingly or intentionally inflict injury on another, see Ind. Code § 35-42-2-1.5, while battery merely requires the defendant to knowingly or intentionally touch another in a rude, insolent, or angry manner, see Ind. Code § 35-42-2-1." Mann v. State, 895 N.E.2d 119, 124 (Ind. Ct. App. 2008).

While some of the court's instructions were not complete, we cannot say that reversal is required under these circumstances. "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001). See also Kane v. State, 976 N.E.2d 1228, 1232 (Ind. 2012) (holding that when a challenged instruction is erroneous, "we presume the error affected the verdict, and we will reverse the defendant's conviction '*unless the verdict would have been the same under a proper instruction.*'") (quoting LaPorte Cmty. Sch. Corp. v. Rosales, 963

---

[2] Subsequently repealed by Pub. L. No. 114-2012, §§ 103-132 (eff. July 1, 2012).

N.E.2d 520, 525 (Ind. 2012)) (emphasis added). Smith argues that the instruction given by the court indicated that substantial risk of death was the "only element" distinguishing aggravated battery as a class B felony from battery as a class C felony. Appellant's Brief at 9. However, the court instructed the jury with respect to the mental state required for aggravated battery as a class B felony and battery as a class C felony. Specifically, the court stated that the statute governing aggravated battery as a class B felony provided that "[a] person who *knowingly inflicts injury* on a person that creates a substantial risk of death commits Aggravated Battery, a Class B felony." Transcript at 290 (emphasis added). The court also instructed the jury that "[i]f you find that the evidence proved beyond a reasonable doubt that [Smith] *knowingly touched Gregory Fulce in a rude, insolent, or angry manner* causing injury . . . you may find [Smith] guilty of the lesser included offense in Count I of Battery, Class C felony." Id. at 292 (emphasis added).

The record also reveals that Smith stabbed Fulce multiple times with a knife at various locations on his upper torso, struggled with Fulce, cut Fulce's arm, and stated: "I'm going to kill you, Greg, I'm going to kill you." Id. at 51. Smith also stated his reason as: "[W]ell, Vincent shot my brother, you know, now I'm going to kill you." Id. at 52. Fulce suffered six injuries including two injuries that penetrated the peritoneal cavity and an injury to the left side of his upper chest. Based upon the record, we conclude that a reasonable jury could not have properly found that Smith did not knowingly or intentionally inflict injury on Fulce that created a substantial risk of death. See McEwen v. State, 695 N.E.2d 79, 87 (Ind. 1998) (holding that an assault with a knife or similar sharp object – particularly to the chest or head region – rarely occurs without

13

awareness of a high probability that death will result); <u>Wilcher v. State</u>, 771 N.E.2d 113, 117 (Ind. Ct. App. 2002) ("Common knowledge bears out the conclusion that an individual is confronted with a substantial risk of death following a stab wound to the chest in circumstances such as these presented here."), <u>trans.</u> <u>denied</u>. We cannot say that Smith's substantial rights were prejudiced based upon all the information provided to the jury. Accordingly, we conclude that any error was harmless. <u>See</u> <u>Dill</u>, 741 N.E.2d at 1234 (concluding that a reasonable jury could not properly have acquitted the defendant and would have rendered a guilty verdict even if the erroneous flight instruction had not been given and holding that the instruction error did not require reversal).

For the foregoing reasons, we affirm Smith's conviction for aggravated battery as a class B felony.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.